USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/14/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
HECTOR BONAPARTE,                                            :
                                                             :
                              Petitioner,                    :    19-CR-862 (VEC)
                                                             :    23-CV-3109 (VEC)
                  -against-                                  :
                                                             :    OPINION & ORDER
UNITED STATES OF AMERICA,                                    :
                                                             :
                              Respondent.                    :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

  Hector Bonaparte, a member of the Latin Kings and an associate of the Black Mob, was charged with conspiracy to violate the narcotics laws (Count Two), and using and carrying a firearm in connection with the narcotics conspiracy (Count Four). *See* Superseding Indictment ("S5"), Dkt. 332. In July 2021, Mr. Bonaparte pled guilty pursuant to a plea agreement to a lesser-included offense of Count Two that reduced the quantity of narcotics with which he was charged and reduced the mandatory minimum sentence that would apply from ten years to five years. *See* Plea Tr., Dkt. 539, at 7–9. On October 22, 2021, this Court sentenced Mr. Bonaparte principally to eight years imprisonment. *See* Sentencing Tr., Dkt. 634, at 28–29. On November 3, 2021, Mr. Bonaparte appealed his sentence. *See* Not. of Appeal, Dkt. 624. On March 6, 2023, the Second Circuit dismissed Mr. Bonaparte's appeal because it was barred by the appeal waiver contained in his plea agreement.[1] *See* Order, Dkt. 922; Mandate, Dkt. 933.

---

[1]   The Second Circuit denied the Government's motion for summary affirmance in part as to the special condition that Mr. Bonaparte refrain from associating with members of any gang or frequenting neighborhoods controlled by the Latin Kings or one of its subgroups because the condition announced at sentencing specified only that Mr. Bonaparte was barred from associating with members of the Latin Kings. *See* Mandate, Dkt. 933, at 2. On March 7, 2023, the Undersigned entered an Amended Judgment that modified the special condition that prevented Mr. Bonaparte from consorting with members of any subgroup of the Latin Kings or frequenting any Latin King-controlled neighborhood to preclude him only from associating with members of the Latin Kings. Am. J., Dkt. 923.

1

On April 12, 2023, Mr. Bonaparte filed this § 2255 petition arguing that his U.S. Sentencing Guidelines ("Guidelines") calculation was wrong, that his counsel was ineffective, and that the conspiracy statute under which he was convicted is unconstitutional.  Pet., Dkt. 940, ¶ 11.  The Government opposed Mr. Bonaparte's § 2255 petition.  *See* Opp., Dkt. 985.  Mr. Bonaparte replied in support of his petition.  *See* Reply Mem., Dkt. 1026.  For the reasons discussed below, Mr. Bonaparte's § 2255 petition is DENIED.

## BACKGROUND

On December 2, 2019, a grand jury indicted Mr. Bonaparte for conspiracy to possess and possess with intent to distribute drugs in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 841(b)(1)(D) (Count Two) and for using and carrying a firearm in connection with the charged drug conspiracy in violation of 18 U.S.C. § 924(c) (Count Four).  *See* S5 at 9–13.

On July 7, 2021, Mr. Bonaparte pled guilty pursuant to a plea agreement to a lesser-included offense of Count Two, conspiring to distribute and possess with intent to distribute 100 grams and more of heroin and forty grams and more of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B).  *See* Plea Tr. at 7–9.  In the plea agreement, Mr. Bonaparte stipulated to a Guidelines calculation that yielded a recommended range of 108 to 135 months' imprisonment; that calculation included a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon in connection with the conspiracy.  *See* Plea Agreement at 2–3.  Mr. Bonaparte also agreed that he would "not file a direct appeal; nor bring a collateral challenge, including . . . [under] Section 2255 . . . of any sentence within or below the Stipulated Guidelines Range of 108 to 135 months' imprisonment."  *Id.* at 4.  Mr. Bonaparte

expressly reserved the right "to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise." *Id.*

At the July 7, 2021, plea hearing, Mr. Bonaparte confirmed that he: wished to plead guilty, *see* Plea Tr. at 16:2–24; understood the crime with which he was being charged, *see id.* at 8:3–4; had discussed the charge with his attorneys, *see id.* at 7:19–22; and was satisfied with his team of lawyers, *see id.* at 4:14–16.  Mr. Bonaparte acknowledged that he was knowingly waiving his right to appeal his sentence or to collaterally attack his sentence if his sentence did not exceed a term of imprisonment of 135 months.  *See id.* at 14:12–20.  Mr. Bonaparte confirmed that he had discussed the Guidelines with his attorney.  *See id.* at 10:18–20.  Mr. Bonaparte also confirmed that no one had threatened him or forced him to plead guilty and that no one had made a promise of what his sentence would be.  *Id.* at 13:5–11; 15:6–8.

On October 22, 2021, the Court varied downward from the stipulated Guidelines range and sentenced Mr. Bonaparte to ninety-six months' imprisonment followed by five years of supervised release.  *See* Sentencing Tr. at 28:23–29:2.  At his sentencing hearing, Mr. Bonaparte confirmed that he had read the Presentence Investigation Report (the "PSR") and discussed it with his lawyer.  *See id.* at 3:3–7.

On November 3, 2021, Mr. Bonaparte appealed his sentence.  *See* Not. of Appeal, Dkt. 624.  On December 8, 2021, Mr. Bonaparte's counsel moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), because "there [were] no non-frivolous legal issues to be raised on appeal."  *See* Mot. to Be Relieved as Counsel, *United States v. Bonaparte*, No. 21-2767 (2d Cir. Dec. 21, 2021), Dkt. 33, at 3.  On March 6, 2023, the Second Circuit denied defense counsel's *Anders* motion because it granted the Government's motion to dismiss the appeal with respect to Mr. Bonaparte's term of incarceration, term of supervised release, and forfeiture, and

summarily affirmed Mr. Bonaparte's conviction and sentence (except for a supervised release condition not at issue here); Mr. Bonaparte's motion for substitute appellate counsel was denied as moot.  Mandate at 2.

## DISCUSSION

### I.  Legal Standard

Because Mr. Bonaparte is proceeding *pro se*, the Court construes his petition liberally. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

Under 28 U.S.C. § 2255(a), a petitioner "may move the court which imposed [the petitioner's] sentence to vacate, set aside or correct the sentence."  Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  "As a general rule § 2255 petitioners may not raise on collateral review a claim previously litigated on direct appeal."  *Abbamonte v. United States*, 160 F.3d 922, 924 (2d Cir. 1998).  "The 'mandate rule' ordinarily forecloses relitigation of all issues previously waived by the defendant or decided by the appellate court."  *United States v. Quinteri*, 306 F.3d 1217, 1225 (2d Cir. 2002).  This is in part because the Court seeks to "protect the finality of federal criminal judgments."  *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998).

"In ruling on a motion under § 2255, the district court is required to hold a hearing 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)).

### II.     Mr. Bonaparte Waived His Right to Challenge His Sentence

It is black letter law that a defendant generally cannot bring a § 2255 petition when, as here, he has waived his right to appeal or collaterally attack his sentence in his plea agreement. A waiver of the right to collaterally attack a sentence must be enforced unless certain conditions are present, including (1) the waiver was not made knowingly, voluntarily, and competently; (2) the basis for the sentence was unconstitutional; (3) the Government breached the plea agreement; or (4) the sentencing court did not "enunciate any rationale" for the petitioner's sentence. *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2016) (collecting cases).

There can be no question that Mr. Bonaparte knowingly, voluntarily, and competently entered into the plea agreement, including waiving his appellate and collateral challenge rights. At the plea hearing, Mr. Bonaparte confirmed under oath that he was pleading guilty voluntarily, of his own free will, and without anyone threatening or forcing him to do so. Plea Tr. 13:2–4, 16:3–24. Mr. Bonaparte confirmed that his plea agreement included a waiver of his right to appeal under certain circumstances. *Id.* at 14:12–20. The Court reminded Mr. Bonaparte at his sentencing that he only had a right to appeal his sentence if the plea agreement did not waive that right. Sentencing Tr. at 31:10–16.

Before pleading guilty, Mr. Bonaparte confirmed that he was satisfied with his legal representation, with whom he had discussed the consequences of a guilty plea, and that he had read the indictment and plea agreement and had discussed both with his attorney. Plea Tr. at 4:10–16, 7:15–22. The Court found that Mr. Bonaparte was "fully competent to enter an informed guilty plea." *Id.* at 4:23–5:1.

Because Mr. Bonaparte knowingly, voluntarily, and competently waived his right to collaterally attack his sentence and none of the other factors that would vitiate the waiver is

present, Mr. Bonaparte has waived his right to proceed on this § 2255 petition on all arguments other than his claim that he received ineffective assistance of counsel.

### III. Mr. Bonaparte's Challenge to the Guidelines Would Fail on the Merits Even If He Had Not Waived His Right to Collaterally Attack His Sentence

Vacating or setting aside a criminal judgment is an extreme remedy that is only appropriate when there is a "constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which results in a complete miscarriage of justice.'" *Bokun*, 73 F.3d at 12 (quoting *Hill*, 368 U.S. at 428). Mr. Bonaparte does not come close to clearing this high bar.

#### A. The Firearms Enhancement Was Properly Applied

Although he stipulated in his plea agreement that a firearms enhancement was appropriate, Mr. Bonaparte now argues that the enhancement is inapplicable because he never physically possessed a firearm or took overt steps to acquire one.[2] Pet. ¶¶ 16, 19. Mr. Bonaparte asserts that his claims to "know a guy" who could obtain a firearm were merely attempts "to sound 'cool' or 'savvy,'" *see id.* ¶ 23, and that the cooperating witness pressed him to procure a firearm in order to drive up the charges, *see id.* ¶ 25.

The telephone and text conversations in the record make clear that Mr. Bonaparte attempted to procure a gun for himself and his co-conspirators. PSR ¶¶ 28–30. As the Court stated at Mr. Bonaparte's sentencing when it rejected his argument that his request for the

---

[2] Mr. Bonaparte also asserts that a two-point enhancement for using or making a credible threat of violence should not be applied, arguing that his statements about using violence were not credible because he was just venting and did not possess a firearm with which to follow through on his statements. Pet., Dkt. 940, ¶ 45. The two-point enhancement was based only on possession of a dangerous weapon, not the use or credible threats of violence. Accordingly, the Court need not consider whether an adjustment pursuant U.S.S.G. § 2D1.1(b)(2) for using violence or making credible threats of violence would also have been appropriate.

firearm was mere braggadocio, "there are a lot of people who get mad and bluster," but they don't "demand that someone bring them a gun." Sentencing Tr. at 27:8–17.

Even if the Court credited Mr. Bonaparte's current narrative — which it does not — the firearms enhancement would still be applicable. The firearms enhancement does not require proof that Mr. Bonaparte personally possessed the weapon or knew of its presence; it is sufficient that a co-conspirator possessed a weapon and that the possession of the weapon was reasonably foreseeable to Mr. Bonaparte. *See United States v. Stevens*, 985 F.2d 1175, 1188 (2d Cir. 1993) ("The defendant need not have had personal possession, or even actual knowledge of the weapon's presence; the enhancement is required 'so long as the possession of the firearm was reasonably foreseeable to the defendant.'" (internal citation omitted)). Mr. Bonaparte had reason to foresee that his co-conspirators had firearms. Members of the Latin Kings, including the Black Mob tribe, routinely made money through firearms sales and used firearms to commit acts of violence. PSR ¶¶ 14–20.

Accordingly, Mr. Bonaparte's complaints about the firearms enhancement are meritless.

### B. The Drug Weight Used to Calculate the Guidelines Was Appropriate

Mr. Bonaparte contends that the quantity of heroin used to calculate his sentence (9 kilograms) was inflated because he was a "low level dealer" who sold only 100 grams of heroin to the cooperating witness.[3] Pet. ¶¶ 56, 71. Mr. Bonaparte also points to his past practice of selling small quantities of heroin to argue that he was not capable of providing or purchasing three to ten kilograms of heroin. *Id.* ¶¶ 67–68. As to the fentanyl (40 grams), Mr. Bonaparte

---

[3] Mr. Bonaparte points to two transactions, one for 60 grams of heroin and the other for 40 grams of heroin. Pet. ¶ 53. Both were controlled purchases by a cooperating witness. PSR ¶¶ 24–26.

argues it that should not have been included because he was unaware that the heroin he was selling was mixed with fentanyl. *Id.* ¶¶ 76–90.

The first problem with Mr. Bonaparte's argument is that he stipulated to the quantities of drugs for which he was responsible in his plea agreement; he confirmed under oath that he had read and discussed the plea agreement with his attorneys before he signed it. Plea Tr. at 12:14–22. Additionally, at the time of sentence, Mr. Bonaparte stated that he had read the PSR and discussed it with his attorneys; the PSR specified that "the base offense level is 32 because the offense involved at least 3,000 kilograms, but less than 10,000 kilograms of converted drug weight." *See* PSR ¶ 7a; Sentencing Tr. at 3:3–7.[4] Mr. Bonaparte's petition also fails for the reasons discussed below.

### 1. The Amount of Heroin Used to Calculate Mr. Bonaparte's Guideline was Reasonable

Putting aside Mr. Bonaparte's stipulation to the weight of the drugs involved in the conspiracy, the quantity used to calculate his Guideline was fully supported. Contrary to Mr. Bonaparte's current position that focuses only on the weight of drugs in the controlled purchases by a cooperating witness, the drug weight used to calculate his Guideline was not inflated; Mr. Bonaparte is responsible for more than just the controlled purchases by the cooperating witness. As a conspirator, he is responsible for actions of his co-conspirators that were in furtherance of the conspiracy and reasonably foreseeable,[5] and he is responsible for the drugs he sold during the conspiracy to buyers other than the cooperating witnesses in controlled buys. *See United States*

---

[4] Using the drug conversion table, the stipulated 9 kilograms of heroin converted to 9000 kilograms of converted drug weight; the stipulated 40 grams of fentanyl converted to 100 kilograms of converted drug weight. *See* U.S.S.G. § 2D1.1 cmt. n.8(D).

[5] Mr. Bonaparte's co-conspirators were involved in distributing many kilograms of heroin and fentanyl, among other drugs. Not counting the amounts attributed to Mr. Bonaparte, the attributable drug amounts for the other defendants indicted in the case included at least 66.1 kilograms of heroin and 11.1 kilograms of fentanyl. PSR ¶¶ 39–49.

*v. Velez*, 554 F. App'x 74, 79 (2d Cir. 2014) (affirming the calculation of drug weight by considering quantities of drugs distributed by co-conspirators). Furthermore, as reflected in the PSR to which Mr. Bonaparte did not object, Mr. Bonaparte was not a "low level" dealer; he sold at least 150 to 250 grams of heroin every two weeks to just one customer; that included heroin that was laced with fentanyl. PSR ¶¶ 24–25. Considering just those quantities, Mr. Bonaparte sold 3.6 to 6.0 kilograms of heroin per year. Inasmuch as the Defendant sold heroin from at least 2017 to late 2019, the quantity of heroin to which he stipulated in his plea agreement is a conservative estimate of the drugs for which he was responsible. *Id.*

### 2. Inclusion of the Weight of the Fentanyl Was Appropriate

The drug quantities used in the Guidelines calculation included 40 grams of fentanyl. Mr. Bonaparte argues that the fentanyl should not have been included because he did not know that the heroin he sold was laced with fentanyl; he asserts that he "is not a chemist and street drugs do not include a list of ingredients . . . ." Pet. ¶ 84; *see also id.* ¶ 78.

Section 841 of Title 21, United States Code, requires only that a defendant knowingly or intentionally possess with intent to distribute "a controlled substance." 21 U.S.C. § 841(a)(1); *see* Pet. ¶ 83. It does not require that the defendant knowingly or intentionally distribute a specific kind of controlled substance. *See United States v. Abdulle*, 564 F.3d 119, 125 (2d Cir. 2009) ("[T]he law is settled that a defendant need not know the exact nature of a drug in his possession to violate § 841(a)(1); it is sufficient that he [or she] be aware that he [or she] possesses some controlled substance." (internal quotation marks and citation omitted)). The Second Circuit has correspondingly "long held that there is no scienter requirement as to drug type and quantity [for crimes involving the constructive or actual possession of drugs]" when calculating a defendant's offense level under the Guidelines. *United States v. Helm*, 58 F.4th 75,

89 (2d Cir. 2023) (citing *United States v. Obi*, 947 F.2d 1031, 1032 (2d Cir. 1991) (rejecting a defendant's argument that the district court's Guidelines calculation for the importation of heroin was erroneous because the defendant "contended that he believed he was smuggling cocaine rather than heroin"; the defendant knew that he was committing a narcotics violation, which was sufficient to justify the district court's inclusion of the heroin's weight in its Guidelines calculation)).

Mr. Bonaparte did not need to know he was selling fentanyl specifically; he only needed to know he was selling a controlled substance, in this case heroin. As the Court explained at Mr. Bonaparte's sentencing:

> Maybe you didn't know the heroin you were selling was cut with fentanyl. That's possible, but the fact is it was well-known at that time that heroin that was being sold was laced with fentanyl, and that didn't slow you down one iota, meaning you either didn't care or you were perfectly fine with the possibility that your product may lead to someone's death.

Sentencing Tr. at 24:22–25:3.

The Court therefore properly included 40 grams of fentanyl in the drug quantities used as part of its Guidelines calculation.

### IV.    Mr. Bonaparte's Claim of Ineffective Counsel Is Meritless

Mr. Bonaparte argues that his counsel was ineffective. Pet. ¶¶ 11, 91–100. To succeed on a claim of ineffective counsel, a petitioner must show (1) that his "counsel's representation fell below an objective standard of reasonableness," and (2) that he was prejudiced because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). This two-prong test is difficult to satisfy. *See United States v. Shi Hui Sun*, No. 12-CV-4776 (KBF), 2013 WL 1947282, at *4 (S.D.N.Y. May 8, 2013) (explaining that an ineffective

assistance of counsel claim "is a difficult showing to make, as courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case" (cleaned up)). To successfully claim ineffective assistance of counsel, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). "A court need not address both prongs of the *Strickland* test; if either fails, the entire claim fails." *Grant v. United States*, 725 F. App'x 76, 77 (2d Cir. 2018) (summary order) (citing *Strickland*, 466 U.S. at 687).

  Mr. Bonaparte argues that his counsel was deficient because his attorneys did not raise any of the arguments discussed above in his appeal and did not advise Mr. Bonaparte of the actual elements of the crimes with which he was charged. Pet. ¶¶ 7, 9, 94. Mr. Bonaparte also contends that his counsel's deficiencies prejudiced him because they led to a firearms enhancement being included in his Guidelines calculation; that enhancement, he argues, precludes him from (1) entering a Residential Drug Abuse Program that could reduce his sentence upon completion; (2) receiving a two-level reduction for zero-point offenders per the Guidelines amendments that went into effect on November 1, 2023; and (3) being eligible for "certain other programs and incentives." Reply Mem. at 4.

  Once again, Mr. Bonaparte's conclusory and self-serving statements are contradicted by his allocution at the plea hearing, during which he affirmed that he was satisfied with his lawyers and had reviewed the indictment and plea agreement with them. *See* Plea Tr. at 4:14–16, 7:15–22, 12:14–22; *Brown v. United States*, No. 14-CR-0659 (NSR), 2019 WL 3311271, at *10 (S.D.N.Y. July 17, 2019) (denying a defendant's habeas petition based on ineffective counsel in

part because it was based on factual assertions that were "belied by the record" of his plea allocution and concluding that the petitioner was not entitled to a hearing).

Putting that aside, Mr. Bonaparte's claims that counsel was ineffective are meritless and unsubstantiated. While Mr. Bonaparte is correct that his attorney did not raise on appeal the arguments that he raised in his habeas motion, failing to do so did not reduce his representation below an objective standard of reasonableness. As discussed above, each of the arguments that he believes counsel should have pursued is meritless and factually contradicted by statements he made under oath when he pled guilty. Appellate counsel has no obligation to make frivolous, meritless arguments. *See United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("Counsel certainly is not required to engage in the filing of futile or frivolous motions."); *Freeman v. United States*, No. 09-CV-4087 (LAP), 2010 WL 4026067, at *7 (S.D.N.Y. Oct. 14, 2010) (concluding that counsel was not ineffective by failing to make the petitioner's "frivolous" arguments and denying the habeas petition).

### V. The Statute Mr. Bonaparte Was Convicted of Violating Is Not Unconstitutionally Vague

Mr. Bonaparte asserts that his "conspiracy charge" is unconstitutionally vague. Pet. ¶ 11. He makes no arguments to support that claim and does not even specify the statute(s) he contends are unconstitutional.[6] *See Northover v. United States*, No. 16-CV-6086 (KMK), 2019 WL 6173704, at *4 (S.D.N.Y. Nov. 19, 2019) (denying a habeas petition challenging the statutes underlying the petitioner's convictions as unconstitutionally vague because the petitioner "ha[d] no argument that the statutes he violated [were unconstitutional]" beyond citations to distinguishable caselaw).

---

[6] Mr. Bonaparte appears to abandon this argument in his reply memorandum, which does not mention the issue. *See* Reply Mem., Dkt. 1026.

In any event, the statute Mr. Bonaparte was convicted of violating, 21 U.S.C. § 846, is not unconstitutionally vague. *See United States v. Jones*, 296 F. App'x 179, 184 (2d Cir. 2008) (holding that 21 U.S.C. § 846 is not unconstitutionally vague); *United States v. Paz-Alvarez*, 799 F.3d 12, 28 (1st Cir. 2015) (same); *United States v. Cooper*, 606 F.2d 96, 98 (5th Cir. 1979) (same).

Mr. Bonaparte has, therefore, not raised any grounds for the Court to find that his conviction was based on an unconstitutionally vague statute.

## CONCLUSION

For the foregoing reasons, Mr. Bonaparte's § 2255 petition is DENIED.

Because Mr. Bonaparte has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C.§ 2253. The Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and permission to proceed *in forma pauperis* is therefore denied.

The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 1, No. 23-CV-3109, and Dkt. 940, No. 19-CR-862, and to CLOSE the case numbered 23-CV-3109. The Clerk of Court is further directed to mail a copy of this Opinion to Mr. Bonaparte at Hector Bonaparte, 87560-054, USP Lewisburg, U.S. Penitentiary, P.O. Box 2000, Lewisburg, PA 17837, and to note the mailing on both dockets.

**SO ORDERED.**

Date: **December 14, 2023**
      **New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**